UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HARSHDEEP JAWANDHA, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ATHIRA PHARMA, INC., DR. LEEN KAWAS, GLENNA MILESON, TADATAKA YAMADA, JOSEPH EDELMAN, JOHN M. FLUKE, JR., JAMES A. JOHNSON, GOLDMAN SACHS & CO. LLC, JEFFERIES LLC, STIFEL, NICOLAUS & COMPANY, INCORPORATED, and JMP SECURITIES LLC,<br><br>Defendants. | Civil Action No. 2:21-cv-862<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |

Plaintiff Harshdeep Jawandha ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Athira Pharma, Inc. ("Athira" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Athira; and (c) review of other publicly available information concerning Athira.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired Athira common stock pursuant and/or traceable to the registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's September 2020 initial public offering ("IPO" or the "Offering"). Plaintiff pursues claims against the Defendants under the Securities Act of 1933 (the "Securities Act").

2. Athira is a late-stage clinical biopharmaceutical company that is focused on developing small molecules to restore neuronal health and stop neurodegeneration.

3. On September 18, 2020, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold approximately 13,397,712 shares of common stock at a price of $17.00 per share. The Company received proceeds of approximately $208.5 million from the Offering, net of underwriting discounts and commissions. The proceeds from the IPO were purportedly to be used to fund clinical trials for its product candidates for the treatment of mild-to-moderate Alzheimer's disease, Parkinson's disease dementia, and neuropathy, as well as research and development activities, working capital, and other general corporate purposes.

4. On June 17, 2021, after the market closed, Athira announced that it had placed its president and Chief Executive Officer, Dr. Leen Kawas ("Kawas"), on leave pending a review of actions stemming from doctoral research she conducted while at Washington State University.

5. On this news, the Company's share price fell $7.09, or approximately 39%, to close at $11.15 per share on June 18, 2021, on unusually heavy trading volume.

6. By the commencement of this action, the Company's stock was trading as low as $10.34 per share, a nearly 40% decline from the $17 per share IPO price.

7. The Registration Statement was materially false and misleading and omitted to state: (1) that Kawas had published research papers containing improperly altered images while she was a graduate student; (2) that this purported research was foundational to Athira's efforts to develop treatments for Alzheimer's because it laid the biological groundwork that Athira was using

in its approach to treating Alzheimer's; (3) that, as a result, Athira's intellectual property and product development for the treatment of Alzheimer's were based on invalid research; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

8. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9. The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o).

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 22 of the Securities Act (15 U.S.C. § 77v).

11. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b).

12. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

13. Plaintiff Harshdeep Jawandha, as set forth in the accompanying certification, incorporated by reference herein, purchased or otherwise acquired Athira common stock pursuant and/or traceable to the Registration Statement issued in connection with the Company's IPO, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14. Defendant Athira is incorporated under the laws of Delaware with its principal executive offices located in Bothell, Washington. Athira's common stock trades on the NASDAQ exchange under the symbol "ATHA."

15. Defendant Dr. Leen Kawas was, at all relevant times, the President, Chief Executive Officer ("CEO"), and a director of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

16. Defendant Glenna Mileson ("Mileson") was, at all relevant times, the Chief Financial Officer of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

17. Defendant Tadataka Yamada ("Yamada") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

18. Defendant Joseph Edelman ("Edelman") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

19. Defendant John M. Fluke, Jr. ("Fluke") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

20. Defendant James A. Johnson ("Johnson") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC

21. Defendants Kawas, Mileson, Yamada, Edelman, Fluke, and Johnson are collectively referred to hereinafter as the "Individual Defendants."

22. Defendant Goldman Sachs & Co. LLC ("Goldman Sachs") served as an underwriter for the Company's IPO.

23. Defendant Jefferies LLC ("Jefferies") served as an underwriter for the Company's IPO.

24. Defendant Stifel, Nicolaus & Company, Incorporated ("Stifel") served as an underwriter for the Company's IPO.

25. Defendant JMP Securities LLC ("JMP") served as an underwriter for the Company's IPO.

26. Defendants Goldman Sachs, Jefferies, Stifel, and JMP are collectively referred to hereinafter as the "Underwriter Defendants."

**CLASS ACTION ALLEGATIONS**

27. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Athira common stock issued in connection with the Company's IPO. Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

28. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Athira's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Athira shares were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by Athira or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

29. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

30. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

31. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)  whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Athira; and

(c)  to what extent the members of the Class have sustained damages and the proper measure of damages.

32. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Background

33. Athira is a late-stage clinical biopharmaceutical company that is focused on developing small molecules to restore neuronal health and stop neurodegeneration. Its approach is "designed to augment neuronal growth factor signaling through HGF/MET [hepatocyte growth factor/MET], a naturally occurring regenerative system." Its proprietary drug discovery platform, or ATH platform, consists of a series of small molecules that are designed to overcome challenges posed by traditional methods, such as delivery of large proteins or gene therapy, to augment HGF/MET.

### The Company's False and/or Misleading Registration Statement and Prospectus

34. On August 26, 2020, the Company filed its Registration Statement on Form S-1 with the SEC, which forms part of the Registration Statement.

35. On September 17, 2020, the Company filed its final amendment to the Registration Statement with the SEC on Form S-1MEF, which forms part of the Registration Statement. The Registration Statement was declared effective the same day.

36. On September 18, 2020, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold approximately 13,397,712 shares of common stock at a price of $17.00 per share. The Company received proceeds of approximately $208.5 million from the Offering, net of underwriting discounts and commissions. The proceeds from the IPO were purportedly to be used to fund clinical trials for its product candidates for the treatment of mild-to-moderate Alzheimer's disease, Parkinson's disease dementia, and neuropathy, as well as research and development activities, working capital, and other general corporate purposes.

37. The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

38. Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

39. Regarding the research and development underlying Athira's approach, the Registration Statement stated that Athira had licensed certain patents from Washington State University ("WSU"). Specifically, it stated: "Under this [license] agreement, WSU granted us an exclusive license to make, use, sell, and offer for sale licensed products and licensed processes that embody the licensed patents (including WSU's rights to a patent jointly owned with Pacific Northwest Biotechnology, Inc.) and ***that form the underlying technology of the drug therapies we are developing***."[1] Regarding risks to this technology, the Registration Statement claimed, in relevant part:

> ***Our approach to targeting brain growth factors through the use of small molecules is based on a novel therapeutic approach, which exposes us to unforeseen risks.***

---

[1] Unless otherwise stated, all emphasis in bold and italics is added.

> We have discovered and are developing a platform of small molecule product candidates from which we have selected our lead product candidate, ATH-1017, which is under development to treat AD and other CNS disorders. Our product candidates target a brain growth factor which is expected to increase synaptic density, recovery in the network and information transmission in the brain, which we believe could ultimately result in improvement in cognition and clinical symptoms. The therapeutic promise of brain growth factors in neurodegenerative disorders had been hampered in earlier therapies by the lack of efficient and non-invasive delivery to the brain. ***Our small molecule product candidates are designed to penetrate the blood brain barrier and enhance the activity of a brain growth factor, but we cannot be certain that our clinical trials will provide sufficient evidence that our design approach results in the intended therapeutic effect.***

[First emphasis in original.]

40. Regarding Leen Kawas, the Registration Statement stated, in relevant part:

> Leen Kawas, Ph.D., has served as our chief executive officer and as a member of our board of directors since January 2014. Previously, Dr. Kawas served as our vice president. Dr. Kawas serves on multiple boards, including the Washington Governor's Life Science Advisory Board, Scientific Review Board for the Alzheimer's Drug Discovery Foundation, and Alzheimer's Association – Washington Chapter Board. She also served as the co-chair of the International Alzheimer's Association Business Consortium. Dr. Kawas earned a Ph.D. in molecular pharmacology from Washington State University in 2011 and a pharmacy degree from the University of Jordan in 2008. ***We believe Dr. Kawas's scientific and professional training, her instrumental role in building Athira Pharma, Inc., and her extensive understanding of our business, operations and strategy qualify her to serve on our board of directors.***

41. Regarding risks to Athira's intellectual property, the Registration Statement stated, in relevant part:

> ***We may be subject to claims challenging the inventorship or ownership of our patents and other intellectual property.***
>
> We may also be subject to claims that former employees or other third parties have an ownership interest in our patents or other intellectual property. ***Litigation may be necessary to defend against these and other claims challenging inventorship or ownership. If we fail in defending any such claims, in addition to paying monetary damages, we may lose valuable intellectual property rights.*** Such an outcome could have a material adverse effect on our business. Even if we are successful in defending against such claims, litigation could result in substantial costs and distraction to management and other employees.

42. The Registration Statement was materially false and misleading and omitted to state: (1) that Kawas had published research papers containing improperly altered images while she was a graduate student; (2) that this purported research was foundational to Athira's efforts to develop treatments for Alzheimer's because it laid the biological groundwork that Athira was using

in its approach to treating Alzheimer's; (3) that, as a result, Athira's intellectual property and product development for the treatment of Alzheimer's was based on invalid research; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

### The Subsequent Disclosures

43. On June 17, 2021, after the market closed, Athira announced that it had placed its president and Chief Executive Officer, Dr. Leen Kawas, on leave pending a review of actions stemming from doctoral research she conducted while at Washington State University ("WSU"). According to the Company's press release, Athira's Board "formed an independent special committee to undertake this review."

44. The same day, *STAT* published an article stating that WSU was investigating claims that Dr. Kawas "published several papers containing altered images while she was a graduate student." These papers "are foundational to Athira's efforts to treat Alzheimer's" because they "established that a particular molecule affects the activity of HGF." Though Athiras is developing a different molecule than the one Kawas examined in the papers at issue, her "doctoral work laid the biological groundwork that Athira continues to use in their approach to treating Alzheimer's."

45. Specifically, "[i]mages of Western blots, used to determine the presence of specific proteins in biological samples, look as though they've been altered from their original state." And according to experts cited in the article, "If the Western blots are inaccurate, then the whole study must be redone." According to the *STAT* article:

> In all four papers led by Kawas, Western blots are surrounded by faint lines. "These suggest that some parts of the photo might have been derived from elsewhere, and



The highlighted band on the left of the top Western blot appears to be the same as the rightmost dark band of the bottom Western blot.

that this was not the blot as it was originally obtained," said Elisabeth Bik, a microbiologist and science consultant who focuses on image authenticity.

In eight different images in four different papers, the same Western blot bands seemingly appear repeatedly. "That's highly unlikely that came about accidentally," said Paul Brookes, professor at the University of Rochester Medical Center, who has also worked on exposing scientific errors. Some researchers previously found to have edited images said they did so because the originals were too unattractive. "It's impossible to assign intent," Brookes said. "But generally, you ask what are the chances this could have happened by accident?" The chances, he added, are "slim."



Two more bands appear to be repeated in these Western blots, which are the same as in the above image.

In two instances, the same image seems to be used to show the results of two different experiments published in different papers. And in a 2011 paper in the Journal of Pharmacology and Experimental Therapeutics, the same series of Western blot bands is seemingly used twice to represent two different proteins, and is stretched out for one of the proteins.

"That's even more potentially problematic," said Bik. ***Such an inaccuracy is potentially reason to retract the paper,*** she said. "That's very misleading."

The Journal of Pharmacology and Experimental Therapeutics published a correction to the paper in 2014, highlighting duplicated labels, but without addressing the repeated use of the same Western blot to represent different proteins, nor the use of the Western blot images that also appear in a separate Kawas paper.



In these Western blots from the 2011 paper, the highlighted bands appear to be the same, though they are labeled as representing different proteins.

\*   \*   \*

The allegedly altered images call into question the validity of the entire studies, said several Alzheimer's experts. *If the Western blots are inaccurate, then the whole study must be redone, said Perry. The images are an important method of determining how the compound interacts with HGF. "If there is a question about key data, all must be questioned," he said.*

46. On this news, the Company's share price fell $7.09, or approximately 39%, to close at $11.15 per share on June 18, 2021, on unusually heavy trading volume.

47. According to an article by *Puget Sound Business Journal*, questions about Dr. Kawas' research had surfaced in the scientific community as early as 2016 through PubPeer, a site that allows users to discuss and critique academic journals. The first comments had been posted in June 2016, and the study authors were sent email alerts of the comments.

48. By the commencement of this action, the Company's stock was trading as low as $10.34 per share, a nearly 40% decline from the $17 per share IPO price..

# FIRST CLAIM

## Violation of Section 11 of the Securities Act

### (Against All Defendants)

49. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

50. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against the Defendants.

51. The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

52. Athira is the registrant for the IPO. The Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

53. As issuer of the shares, Athira is strictly liable to Plaintiff and the Class for the misstatements and omissions.

54. None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement was true and without omissions of any material facts and were not misleading.

55. By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

56. Plaintiff acquired Athira shares pursuant and/or traceable to the Registration Statement for the IPO.

57. Plaintiff and the Class have sustained damages. The value of Athira shares has declined substantially subsequent to and due to the Defendants' violations.

## SECOND CLAIM

### Violation of Section 15 of the Securities Act

### (Against the Individual Defendants)

58. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

59. This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

60. The Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Athira within the meaning of Section 15 of the Securities Act. The Individual Defendants had the power and influence and exercised the same to cause Athira to engage in the acts described herein.

61. The Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

62. By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

ROSSI VUCINOVICH, P.C.
1000 Second Avenue, Suite 1780
Seattle, WA 98104

| | |
|---|---|
| Dated: June 25, 2021 | By: s/ Benjamin T. G. Nivison<br>**ROSSI VUCINOVICH, P.C.**<br>Benjamin T.G. Nivison, WSBA Bar No. 39797<br>1000 Second Avenue, Suite 1780<br>Seattle, WA 98104<br>Phone (425) 646-8003<br>Fax (425) 646-8004<br><br>**GLANCY PRONGAY & MURRAY LLP**<br>Robert V. Prongay<br>Charles H. Linehan<br>Pavithra Rajesh<br>1925 Century Park East, Suite 2100<br>Los Angeles, CA 90067<br>Telephone: (310) 201-9150<br>Facsimile: (310) 201-9160<br><br>**THE PORTNOY LAW FIRM**<br>Lesley Portnoy<br>1800 Century Park East, Suite 600<br>Los Angeles, CA 90067<br>Telephone: 310-692-8883<br>lesley@portnoylaw.com<br><br>*Attorneys for Plaintiff Harshdeep Jawandha* |